[Cite as *Garcia v. Gillette*, 2014-Ohio-1868.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| DENIS GARCIA, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2013-A-0015 |
| PATRICIA A. GILLETTE, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CV 1090.

Judgment: Affirmed in part, vacated and remanded in part.

*Mark F. Craig*, Brouse McDowell, 36901 American Way, Suite 2-B, Avon, OH 44011 (For Plaintiff-Appellant).

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendants-Appellees).


COLLEEN MARY O'TOOLE, J.

{¶1} Denis Garcia appeals from the January 31, 2013 judgment entry of the Ashtabula County Court of Common Pleas, awarding damages in his case for trespass, public nuisance, and ejectment against his neighbors, Patricia Gillette and Francis Deibel. Mr. Garcia contends the trial court erred in failing to grant a mandatory injunction requiring his neighbors to move their house, garage and driveway. He further

contends the trial court erred in determining monetary damages for trespass, and failing to award him attorney fees. We affirm in part, vacate in part, and remand.

{¶2} Ms. Gillette and Mr. Deibel own a property located at 3089 Lake Avenue, North Kingsville, Ohio. Commencing in 1996, they constructed improvements or replacements to the house, garage, and driveway, which completed in November 1997. It is undisputed that the driveway encroaches on the adjacent, undeveloped lot at 3111 Lake Road East, North Kingsville, Ohio. In 1997, that property was owned by Marion and Sheila Senk. The Senks never noticed or complained about the encroachment. It is further undisputed that the house and garage built or improved by Ms. Gillette and Mr. Deibel violate the zoning ordinance of North Kingsville existing in 1996, requiring a 20 foot setback for any structure from an adjacent property line. The Gillette-Deibel house and garage are too close to the 3111 Lake Road East property. Pursuant to R.C. 713.13, violations of zoning ordinances are public nuisances. The Senks never noticed or complained about this violation.

{¶3} In March 2007, Mr. Garcia purchased the Senks' property. He never noticed the encroachment of his neighbor's driveway, nor the zoning violation.

{¶4} In December 2010, counsel for Ms. Gillette and Mr. Deibel sent a letter to Mr. Garcia. His clients were looking to move, and had a survey done, which showed their driveway encroached on Mr. Garcia's property. The letter noted the driveway could not be moved, due to the location of the Gillette-Deibel house and garage. The letter proposed a settlement of the trespass, through an exchange of property. Attached to the letter was a map, indicating the proposed property exchange.

2

{¶5} Negotiations between the parties failed. November 30, 2011, Mr. Garcia filed this action. Ms. Gillette and Mr. Deibel answered and counterclaimed. Mr. Garcia moved for summary judgment, both in support of his own claims, and against those of Ms. Gillette and Mr. Deibel. The latter failed to respond to the summary judgment motion, which the trial court granted December 14, 2012.

{¶6} Hearing on damages went forward January 7, 2013. Mr. Garcia sought to have his neighbors' driveway, house, and garage moved through mandatory injunction. He further sought monetary damages for the encroachment caused by the driveway extending back to the time of its completion in November 1997, and attorney fees. Mr. Garcia testified on his own behalf, as did Roger Sours. Mr. Sours is a real estate appraiser, and testified that the rental value of the property upon which the driveway encroached was $26 per month.

{¶7} January 31, 2013, the trial court filed its judgment entry on damages. The trial court found a mandatory injunction requiring Ms. Gillette and Mr. Deibel to move their house, garage, and driveway excessive and burdensome. Rather, it ordered the parties to exchange property in order to remove the trespass and the zoning violation. It adopted the exchange mapped out by counsel for Ms. Gillette and Mr. Deibel in his letter of December 2010. It granted Mr. Garcia monetary damages in the amount of $26 dollars per month for the trespass caused by the driveway, commencing from the month he purchased the property in 2007, until the exchange of property occurred. The trial court declined to consider a grant of attorney fees.

3

**{¶8}** This appeal timely ensued.

**{¶9}** A trial court's determination of damages is reviewed for abuse of discretion. *Orrenmaa v. CTI Audio, Inc.*, 11th Dist. Ashtabula No. 2007-A-0088, 2008-Ohio-4299, ¶137. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.2008).

**{¶10}** Mr. Garcia assigns three errors. We consider them in reverse order.

**{¶11}** For his third assignment of error, Mr. Garcia states, "The trial court committed error when it failed to properly cure the public nuisance." The issue presented for review is, "Did the trial court commit error when it failed to order injunctive relief to cure the public nuisance?"

**{¶12}** Mr. Garcia's claim for public nuisance relates to the setback violation concerning his neighbors' house and garage, and is premised on R.C. 713.13, which states:

**{¶13}** "No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other

4

remedies provided by law, may institute a suit for injunction to prevent or terminate such violation."

{¶14} However, a trial court is not required to grant injunctive relief under R.C. 713.13. *Miller v. W. Carrollton*, 91 Ohio App.3d 291, 296 (2d Dist.1993).

{¶15} "The extraordinary nature of the remedy by injunction calls for a particular application of equitable principles, and it may be said to be the duty of the court to consider and weigh the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief. Because of the drastic character of mandatory injunctions, such rules apply with special force to them.

{¶16} "When the court is thus asked to undo something that has been done, it must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as to make its refusal work a real and serious hardship and injustice.

{¶17} "The facts which will warrant mandatory relief must be clear, be free from reasonable doubt, and disclose the prospect of irreparable injury to the complainant. Equity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown. Such relief will be refused where the injury is so slight as to bring the case within the maxim 'de minimis non curat lex,' where there is no appreciable damage, where a mandatory decree would require a difficult and expensive act, or where its enforcement would necessitate close and continuous supervision by the court for an indefinite period. As in other cases of injunction, the court will balance the equities between the parties and consider the

5

benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly.

{¶18} "Although particular regard should be given to the public interest, 'the grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.' *Weinberger v. Romero-Barcelo* (1982), 456 U.S. 305, 313, * * *." (Parallel citations omitted.) *Miller*, *supra*, at 296-297.

{¶19} In this case, the trial court specifically found that injunctive relief would be excessive and burdensome. The decision whether to grant or deny a mandatory injunction lies within the trial court's discretion. *Old Mill Village Homeowners Assn. v. Bacik*, 9th Dist. Medina No. 2118, 1993 Ohio App. LEXIS 635, *4 (Feb. 3, 1993). Thus, even if Mr. Garcia had standing to seek an injunction, under the circumstances presented, we do not find the trial court abused its discretion in denying that relief in this case.

{¶20} The third assignment of error lacks merit.

{¶21} For his second assignment of error, Mr. Garcia states, "The trial court committed error when it improperly determined the amount of money damages for trespass." One issue is presented for review: "Did the trial court commit error when it failed to properly calculate the amount of money damages owed to Garcia for the Appellees' trespass?"

6

**{¶22}** Under this assignment of error, Mr. Garcia advances two arguments. The first is the trial court erred in only ordering damages of $26 per month for the encroaching driveway back to the date he purchased the property in 2007, rather than for the entire period the violation has existed – i.e., since November 1997. He argues that as successor in title to the Senks, he is entitled to any monetary damages to which they were entitled for the encroachment. As authority, he cites to *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392 (10th Dist.2002).

**{¶23}** We respectfully disagree that the *Abraham* case stands for the proposition advanced. Therein, the Tenth District merely held, "[A] plaintiff may sue for trespass even though the trespass began prior to the plaintiff's taking possession, if the defendant's trespass continues after the plaintiff takes possession." *Id.* at ¶17. There is nothing in the case addressing the issue of whether a plaintiff may recover damages in trespass for the period prior to taking possession. Consequently, this argument lacks merit.

**{¶24}** Mr. Garcia also argues under this assignment of error that the trial court should have granted him attorney fees. The general rule is that attorney fees may only be granted on statutory authority or contract, or when a party has acted in bad faith. *See, e.g., The Strategy Group for Media, Inc. v. Lowden*, 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, ¶55. However, Ohio common law allows the prevailing party in a trespass action attorney fees as compensatory damages. *Payne v. Kerr*, 4th Dist. Ross No. 1233, 1986 Ohio App. LEXIS 8528, *7-*8. (Sept. 15, 1986), citing *The Cleveland, Columbus and Cincinnati R.R. Co. v. Bartram*, 11 Ohio St. 457 (1860);

7

*Stevenson v. Morris*, 37 Ohio St. 10 (1881). The determination of such damages is within the discretion of the trier of fact. *Id.* at *8.

{¶25} There is certainly no indication of bad faith on the part of Ms. Gillette and Mr. Deibel in this case: they first brought the encroachment complained of to Mr. Garcia's attention. The trial court found no basis for punitive damages, and determined there was no evidence before the court to determine the amount of Mr. Garcia's attorney fees. Again, we do not find an abuse of discretion.

{¶26} The second assignment of error lacks merit.

{¶27} For his first assignment of error, Mr. Garcia states, "The trial court committed error when it ordered the parties to swap undefined and un-appraised portions of their parcels as a remedy to private trespass and encroachment." The issue presented for review is: "Did the trial court commit error when it ruled under the facts presented upon Summary Judgment that transfer of the Defendants-Appellees (sic) property was a warranted remedy for the encroachment upon the Garcia Property?" In support of this assignment of error, Mr. Garcia emphasizes the unique status of real property at law; that mandatory injunction to remove an encroachment is a favored remedy; and, that the exchange of lands ordered by the court is not fully defined nor any valuation of the lands made.

{¶28} "A mandatory injunction is a proper remedy for a landowner to invoke against an adjoining landowner to compel him to remove an encroachment. *McGee v. Randolph* (Summit App. 1949), 56 Ohio Law Abs. 24. The granting of a mandatory injunction, however, lies largely within the discretion of the trial court. *Varwig v. Cleveland, C.C. & St. L.R. Co.* (1896), 54 Ohio St. 455. Most jurisdictions permit a court

8

to balance the relative hardships to the parties in devising an appropriate equitable remedy. These jurisdictions hold that where the expense and difficulty of removal of an encroachment would be great and the encroachment was causing minimal damage to the plaintiff, or its removal would result in little benefit to him, a mandatory injunction is not required. See Annotation, *Mandatory Injunction to Compel Removal of Encroachments by Adjoining Landowners*, 28 A.L.R.2d 679." *Old Mill Village Homeowners Assn. v. Bacik*, *supra*. at *4-5.

**{¶29}** It is clear from the trial court's judgment entry that it considered issuance of a mandatory injunction inequitable in this case. The court found the remedy "excessive" and "burdensome." Mr. Garcia argues it was his neighbors' burden to present evidence that a mandatory injunction would constitute a hardship, and that the record lacks any such evidence. We disagree. The record demonstrates the encroachment commenced in 1996, and that Mr. Garcia's predecessors in ownership, either did not know, or did not care. As the dissent notes, the encroachment was apparent from simply looking at the tax map. Nevertheless, Mr. Garcia purchased the property without complaint in 2007, and remained unaware of the problem until Ms. Gillette and Mr. Deibel's attorney informed him in 2010. And while not de minimis, nothing in the record indicates the encroachment was made intentionally or willfully.

**{¶30}** An injunction in this case would require Ms. Gillette and Mr. Deibel to remove all portions of the house, driveway, and garage from Mr. Garcia's land, and at least 20 feet from the boundary line between the properties. Clearly, the trial court did balance the hardships in this case, when it denied the mandatory injunction, since alternative remedies were available. We do not find this an abuse of discretion.

9

However, the trial court's judgment entry specifically orders an exchange encompassing removal of the zoning violation, to which Mr. Garcia is not entitled. Further, it merely adopts as a reference the map submitted by Ms. Gillette's and Mr. Deibel's attorney outlining a possible property exchange. When property may be appraised, approximations of value are disfavored. *McGuire v. Kashen*, 6th Dist. Lucas No. L-94-294, 1995 Ohio App. LEXIS 4007, *15 (Sept. 15, 1995). Rather, any exchange, whether by transfer or purchase, should conform to the actual value of the property. *Id.*

{¶31} Consequently, the first assignment of error lacks merit, insofar as the trial court did not abuse its discretion in fashioning a remedy for the encroachment, rather than granting a mandatory injunction. However, for the reasons indicated, the particular remedy adopted by the trial court must be vacated, and this matter remanded. On remand, the trial court must hold further hearing, and fashion a remedy equitable to both sides. If the trial court deems monetary compensation appropriate to remedy the encroachment, then property on which the encroachment exists must be appraised and a market value established to ensure that neither party suffers an injustice. If the trial court deems a "property swap" appropriate, a similar appraisal must be conducted on the portion of Ms. Gillette and Mr. Deibel's property that would be the subject of the swap, to ensure it is of sufficiently similar value to the property on which the encroachment presently exists. Since actual valuations can be made, such appraisals must be done before the trial court fashions its remedy, whichever is chosen.

**{¶32}** The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, vacated and remanded in part for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J., concurs,

TIMOTHY P. CANNON, P.J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

TIMOTHY P. CANNON, P.J., concurring in part and dissenting in part.

**{¶33}** I respectfully concur in part and dissent in part from the majority opinion.

**{¶34}** Appellant's first assignment of error alleges that the trial court erred in ordering the "property swap." Our standard of review is whether the trial court abused its discretion in fashioning this remedy, and the majority holds that it did not. For the following reasons, I dissent from this holding.

**{¶35}** For certain, the trial court was in an unenviable position of having to weigh the competing equities. Ownership of private property is a right of significance in Ohio. Article I, Section 19 of the Ohio Constitution states, in pertinent part: "Inviolability of private property: Private property shall ever be held inviolate, but subservient to the public welfare." This provision anticipates occasions where the process of eminent domain might be necessary for the *public* welfare.

**{¶36}** The remedy fashioned by the trial court, which requires appellant to transfer his property, is not without precedent. However, it essentially amounts to an extension of the right of eminent domain to benefit a *private* party. This should only be

11

permitted in the most exceptional of circumstances. *See Collier v. Dorcik*, 9th Dist. Medina No. 3009-M, 2000 Ohio App. LEXIS 5540, *8-9 (Nov. 29, 2000) (citation omitted):

> It should be the exceptional case in which an encroacher is permitted, under the auspices of equity, to force a sale of property on an innocent landowner. Such equitable purchases should be restricted to cases in which the encroaching party would suffer extreme damage and the resulting harm to the innocent landowner would be minimal.

{¶37} Some courts that have refused to issue injunctive relief have done so only because the encroachment was minimal. For example, in weighing competing positions, the Ninth District found the trial court did not abuse its discretion in refusing to grant an injunction where the encroachment of a deck amounted to nine inches. *Old Mill Village Homeowners Assn. v Bacik*, 9th Dist. Medina No. 2118, 1993 Ohio App. LEXIS 635, *5-6 (Feb. 3, 1993). However, the court did find that the trial court abused its discretion in failing to grant injunctive relief with regard to 13 feet of landscaping. *Id.*

{¶38} A minor intrusion based on a good-faith assessment of the property involved is one thing. However, in this case there is cause for concern regarding the *scope* of appellees' encroachment on appellant's property. An objective view of the relevant property suggests this was not the result of a good-faith mistake.

{¶39} Initially, although appellees argue the encroachment was unintentional and reasonably miscalculated, nothing in the record supports this argument. No evidentiary material was provided in response to appellant's motion for summary judgment, and appellees did not testify at the damages hearing. Therefore, any suggestion that appellees merely made an unintentional mistake is not supported by the record.

12

{¶40} Further, a cursory view of the tax map readily establishes the "reverse L-shaped" nature of appellant's property. Appellees must have been aware of this when they laid out the plans for their garage and driveway. The bottom of the "L-shaped" area separates appellees' property from the road. Appellees' property and appellant's property meet for 92.50 feet at this bottom portion of the "L." Appellees built their garage facing the northern edge of the bottom of the "L," almost on appellant's property line. The appraiser's undisputed testimony indicates that the driveway encroaches on appellant's property 65 feet to the south and 40 feet to the east, for a total of 2,600 square feet. Therefore, the distance the driveway area encroaches to the south is over two-thirds of the length between appellees' property and the road, and 40 feet over the property line. In addition, appellees' property at the road is 74.80 feet wide. Therefore, the 40-foot wide driveway is over 50 percent wider than appellees' entire frontage.



GILLETTE & DEIBEL SURVEY
LOT 24
NORTH KINGSVILLE VILLAGE
R2, T13 OF THE CONNECTICUT
WESTERN RESERVE
ASHTABULA COUNTY, OHIO

LAKE ERIE

SITE SKETCH

LAKE ROAD 60'

EXHIBIT
1

{¶41} The trial court found that the encroachment on appellant's land was not intentional. However, it is not clear how the trial court arrived at this conclusion. It seems apparent that, due to the magnitude of the encroachment, there was more than an errant miscalculation. Even if appellees could be forgiven for not having a survey performed prior to construction, a minimal reference to the tax maps would have alerted them to the fact that construction consistent with their plans would cause a significant encroachment. Again, appellees' frontage is only 74.80 feet wide. The eastern portion of their property is, at the closest point, 92.50 feet from the road. However, they placed their driveway less than 30 feet from the road. If they had testified, appellees might arguably have claimed an innocent mistake in extending the project 5 or 10 feet across the line. However, it would be difficult to credibly make such a claim with the 40-foot encroachment.

{¶42} I agree with the trial court that an injunction may be excessive and burdensome on appellees. However, appellees should not be rewarded for usurping the property rights of appellant without offering any explanation as to how this occurred. The scope of their encroachment is inversely proportional to their justification for the breach. In the absence of any testimony from appellees, the encroachment here is much more suggestive of a total disregard for appellant's property rights. Appellant should not be required to transfer any of his land. Under the facts and circumstances of this case, I believe injunctive relief from the encroachment should have been granted.

{¶43} In addition, the trial court's "property swap" remedy, i.e., that the parties transfer "equal amounts of land" as proposed by appellees, raises cause for concern. No appraisal of either property is in the record before this court. It may be that the

encroached-upon area, which is to be transferred to appellees, is lower in value than the side-yard area to be transferred to appellant. However, nothing in the record supports that fact. These are lakefront properties with topographical issues; any modification of property lines should clearly be made for the benefit of appellant.

{¶44} I concur in the balance of the majority opinion.