[Cite as *Victor v. Big Sky Energy, Inc.*, 2018-Ohio-4666.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JAMES A. VICTOR, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2017-A-0045** |
| BIG SKY ENERGY, INC., et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CV 00365.

Judgment: Affirmed in part and reversed and vacated in part.

*Robert S. Wynn*, 7 Lawyers Row, P.O. Box 121, Jefferson, OH 44047, *Jerome A. Lemire* and *Michael E. Hamper*, *III*, 531 East Beech Street, P.O. Box 346, Jefferson, OH 44047 (For Plaintiffs-Appellees).

*Gino Pulito* and *Christopher J. Caffarel*, Pulito & Associates, 230 Third Street, Elyria, OH 44035 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Big Sky Energy, Inc., appeals from the orders of the Ashtabula County Court of Common Pleas, granting judgment in favor of plaintiffs-appellees, James and Melody Victor and Lora, Inc. (collectively "plaintiffs"), on their claims to terminate oil and gas leases and for Trespass, and awarding damages and attorney's fees. The issues to be determined by this court are whether expert testimony is admissible if the expert testifies the opinions contained in his report are his own; whether a document containing information a party is required to report by statute is

inadmissible due to hearsay; whether an oil and gas lease may be terminated when no oil or gas is produced for a period of three years; whether allowing a compressor to remain on a lessor's property after the lease for such item ended is Trespassing; whether damages are supported by the weight of the evidence when testimony was presented in support of the amounts awarded; whether an award of attorney's fees is permitted when the evidence of "bad faith" stems from a defendant's choice to defend against the plaintiff's Complaint; and whether expert fees can be awarded in the absence of punitive damages or attorney's fees. For the following reasons, we affirm in part and reverse and vacate in part the judgments of the lower court.

{¶2} On May 27, 2014, the plaintiffs filed a Complaint for Declaratory Judgment, Quiet Title of Real Estate, and Trespass against Big Sky and various other parties who are not part of the present appeal.[1] The plaintiffs alleged that they were owners of parcels of property on which there were oil and gas leases for wells operated by Big Sky. Under Claims One and Two, the Victors alleged that the leases for two wells on their property ("Long Otis #1 Well" and "Oren Well") had "expired for lack of production of oil and/or gas in paying quantities." In Claim Three, Lora, Inc. raised the same claim as to two wells located on its property ("Oren Well 1-A and 2-A"). Claim Four alleged that Big Sky had breached an implied covenant to conduct operations relating to royalties with reasonable care. Claim Five alleged that Big Sky relocated a piece of compressor equipment on the Victors' property without permission to do so, constituting a Trespass. On July 25, 2014, the plaintiffs filed an Amended Complaint with no pertinent changes. Big Sky filed an Answer to the Complaint and the Amended

---

1. All claims against the defendants other than Big Sky were resolved through dismissals or judgment on the pleadings.

Complaint.

{¶3} The plaintiffs filed a Motion for Summary Judgment on April 17, 2015, arguing that the oil and gas leases had terminated due to non-production and there was no question the compressor lease had expired. Big Sky filed a Response on July 13, 2015.

{¶4} On July 30, 2015, the court issued a Judgment Entry denying summary judgment regarding the oil and gas leases. It granted summary judgment as to the compressor lease, finding that it had expired in 1998.

{¶5} On November 16, 2015, the plaintiffs filed a Notice of Submission of Expert Report, attached to which was the report of Robert Barnett, president of American Energy Associates. The report addressed the production and profitability of the wells.

{¶6} Big Sky filed a Motion in Limine; Motion to Strike Plaintiff's Expert Report in which it argued Barnett had conceded in his deposition that his report was edited by plaintiffs' counsel, he did not compile the numbers contained in the report, and that the report included inaccurate statements contradicted by his deposition testimony.

{¶7} A trial was held on January 28, 2016. The following pertinent testimony and evidence were presented:

{¶8} James Victor testified that he and his wife own two parcels of land, each with one well operated by Big Sky. Lora, Inc., which is owned by Victor's father and of which Victor is vice-president, owns the remaining parcel, which contains two wells. Victor testified that he and his wife received yearly royalties from Big Sky over a period of years from 2007 to 2014, which amounts ranged from a low of $38.45 to a high of $388.06. He was unaware of any statements received by Lora, Inc. about its royalties.

3

{¶9} Victor observed the properties on a weekly basis and "almost never" saw anyone looking at the wells or servicing them. He had not seen certain items that would be needed for gas production on the property for years, such as a gas meter or pump jack motors.

{¶10} Victor testified specifically about the condition of the wells from 1989-1991, during which time he did not own the properties but "was in full control of them," as they belonged to Lora, Inc., his parents' company. However, he did not see Big Sky employees on the property and noted that "the main valves on the wellheads were shut down." He spoke to the operator of the wells, Pepcor, and was informed that they were not operating and the company was in bankruptcy.

{¶11} Regarding the issue of the compressor, he testified that the lease to have a compressor on the property had expired and he requested that Big Sky remove the compressor. He testified that, instead, it was moved to another portion of the property approximately two years ago, which he did not authorize. Victor testified that the compressor runs often, he can hear it from his house, he has received a noise complaint from a neighbor, and it is "unsightly." He testified that the area where the compressor was previously located was left in "terrible condition." There was garbage in that area, containers with fluid, the fence was "dilapidated," and a "rusted-up pipe" remained.

{¶12} Robert Barnett, the owner of American Energy Associates, testified on behalf of the plaintiffs. He explained that operators of wells are required to report well production and drilling to the Ohio Department of Natural Resources (ODNR). Well summary reports from ODNR were submitted for the wells in question. He testified that in the preparation for his testimony and report, he looked at discovery information and

4

the documents from the ODNR, as well as inspected the wells.

{¶13} In relation to the wells, Barnett testified that he "observed probably one of the worst cases of neglect of any kind of equipment" he had ever seen. He observed oil leaking, holes in some of the tanks, no working chart reading equipment, missing pump jack engines, smashed electrical boxes, and valves that were rusted open or shut. He believed the wells were not capable of being operated in that condition and that they did not operate in "paying quantities" from 2008 to 2013. He believed they did not make "enough to meet inherent expenses." He reached this conclusion based on his experience, the costs of operating a well, and the condition of the wells.

{¶14} Robert Barr, the owner of Big Sky, testified that he is the sole employee of Big Sky, although some work is contracted out when necessary. Big Sky has approximately 40 wells in the area near the Victor property where pipelines converge, which run through the compressor on the plaintiffs' property.

{¶15} Following the first day of trial, the parties briefed the issue of the admissibility of Barnett's report. The trial court issued a May 10, 2016 Judgment Entry ruling that Part 3, Section 2, which included tables placed into the report by the plaintiffs' attorney, was stricken from the report. The remainder was admitted.

{¶16} On the second day of the trial, Barr testified that he removed the compressor that had been subject to the initial lease and a smaller compressor, necessary to operate the wells, was placed on the Victors' property, which agreement was negotiated with the Victors' previous attorneys. Barr testified that the wells have been productive for "part of the time" Big Sky owned them. He stated that most of Big Sky's wells are "marginal" but make profits with limited labor. He disagreed with the numbers presented by Barnett and testified that the wells in question are profitable.

5

{¶17} The court issued a November 16, 2016 Judgment Entry, finding that there was no evidence the wells produced gas from 1989-1991 and concluding that the leases had expired for lack of production of oil or gas in paying quantities, holding that they "are deemed quieted and forfeited." The court also concluded that Big Sky had a compressor and other equipment on the plaintiffs' property, which constitutes Trespass. It ordered the equipment removed and the property restored.

{¶18} A hearing was held on the issue of damages and attorney's fees on November 29, 2016.

{¶19} Victor testified that no action had been taken by Big Sky to restore the well sites, or remove their equipment or compressor. He testified that the compressor, on "the current site and the prior site," occupied about an acre. He explained the compressor was originally in a fenced-in building, which was approximately 20 feet by 20 feet. Victor testified that he was certain he had not received rent for the compressor space in 2014 through 2016, which should have been $900 a year.

{¶20} Thomas Bukky, the owner of Star Excavating, testified that it would cost $3,260 to "restore" the property through cleanup and grading. He estimated the cost of removing equipment from the well sites at $22,000. He consulted with other entities in arriving at this estimate to compare costs.

{¶21} Linda Yurak, a realtor, determined the rental price of an acre of the Victors' property to be $500 a month. She based this conclusion on statistics for commercial-type property in Ashtabula and that it was a vacant lot, discussing possible uses for such property.

{¶22} Jerome Lemire, an attorney for the plaintiffs, estimated the cost for complying with the court's orders to prepare and file oil and gas lease releases would

6

be $443. He also testified regarding the amount of attorney's fees. Lemire testified that it was necessary to hire Barnett as an expert in this case.

{¶23} On February 2, 2017, the trial court filed a Judgment Entry awarding the plaintiffs' attorney's fees totaling $52,743.21, $18,000 for rental of the compressor from 2014 through 2016, $22,000 for removal of equipment, $3,260 for cleaning up the well sites, $443 for the cost of recording the releases, and $7,875 for Barnett's expert witness fees.

{¶24} Big Sky timely appeals and raises the following assignments of error:

{¶25} "[1.]  The trial court abused its discretion when it partially overruled Appellant's motion in limine and admitted the testimony of R.G. Barnett and a portion of his expert report.

{¶26} "[2.]  The trial court abused its discretion and committed reversible error by allowing the admission of Well Completion Reports.

{¶27} "[3.]  The trial court erred in finding the Long Otis #1 Lease, the Oren #1 Lease, and the Oren #1A and Oren #2A leases expired for lack of production.

{¶28} "[4.]  The trial court's judgment finding Big Sky liable for trespass was against the manifest weight of the evidence.

{¶29} "[5.]  The trial court abused its discretion when it awarded the Appellees-Plaintiffs the sum of $104,321.21 in damages.

{¶30} "[6.]  The trial court abused its discretion in awarding attorney fees.

{¶31} "[7.]  The trial court erred as a matter of law by awarding expert witness expenses to the Victors without an award of punitive damages."

{¶32} In its first assignment of error, Big Sky argues that Barnett's report should have been excluded, pursuant to the Motion in Limine, because Barnett did not review

7

the discovery information or Big Sky's financial records, and since "the conclusions reached in the report were not his own." Big Sky contends that admission was barred by the Ashtabula County Court of Common Pleas Local Rules.

{¶33} "[T]he denial of a motion in limine is within the sound discretion of the trial court." (Citation omitted.) *Biro v. Biro*, 11th Dist. Lake Nos. 2006-L-068 and 2006-L-236, 2007-Ohio-3191, ¶ 18. To the extent that the alleged error relates to the trial court's failure to follow its local rules to exclude the report and testimony, we note that the enforcement of local rules "is a matter within the discretion of the court promulgating the rules." *Dvorak v. Petronzio*, 11th Dist. Geauga No. 2007-G-2752, 2007-Ohio-4957, ¶ 30.

{¶34} Through its Motion, and at trial, Big Sky objected to the admission of the expert report and Barnett's testimony. The sole basis for the alleged error in excluding the report and the testimony raised in this assignment of error is Ashtabula County Court of Common Pleas Local Rule 6(F)(2). That rule provides that a party may not call an expert unless a report has been provided. It further states that "[t]he report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report." *Id.*

{¶35} Big Sky argues that the report did not reflect Barnett's opinions. Barnett's testimony indicated otherwise. Barnett testified that he generated, reviewed, and signed the report and that it contained his findings and opinions. He provided testimony that explained the grounds for his conclusions, including his personal observations of the plaintiffs' property, review of the ODNR records, and experience in the oil and gas industry. To the extent that Barnett did testify that certain figures/tables were prepared

8

by counsel (although he was present and approved of the data included in the report), this information was stricken by the trial court and, thus, not at issue here.

**{¶36}** Big Sky also contends that Barnett did not review certain data regarding the production of the wells or financial documents. However, it fails to indicate how this warrants exclusion of the report under Local Rule 6(F)(2). This rule does not mandate that an expert review all possible evidence but only that the report reflects his opinions relating to issues on which he will testify. To the extent that Big Sky believes Barnett should have more thoroughly reviewed certain records, this relates to the weight and credibility of his testimony, not its admissibility under Local Rule 6(F)(2). Based on the foregoing, we find no violation of Local Rule 6(F)(2) that would warrant reversal, emphasizing that "[c]ourts are given latitude in following their own local rules." (Citation omitted.) *Dvorak,* 2007-Ohio-4957, at ¶ 30.

**{¶37}** The first assignment of error is without merit.

**{¶38}** In its second assignment of error, Big Sky argues that the trial court abused its discretion by allowing the admission of "Well Completion reports."[2]

**{¶39}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Likewise, "[t]he trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992).

**{¶40}** Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth

---

2. Big Sky appears to be referencing exhibit 32, since the objection to the "Well Completion Reports" it cites in the trial transcript relate to that exhibit. The exhibit contains "Well Summary" reports.

9

of the matter asserted." Hearsay is inadmissible at trial unless it falls under an exception to the Rules of Evidence. Evid.R. 802.

{¶41} Evid.R. 803(8) provides an exception to the inadmissibility of hearsay for:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

{¶42} In the present matter, the documents in question are "Ohio Well Summary reports," which included the affidavit of the Public Information Officer from the ODNR, stating that they were true copies of the reports maintained by the ODNR, Division of Oil and Gas Resources Management. These reports provide figures of the annual oil and gas production of the wells at issue in the present case. Big Sky contends that the reports are hearsay because they contain information from laypersons, "specifically the well operators who voluntarily provided the information."

{¶43} For a document to be admissible under Evid.R. 803(8)(b), "the observations of the reporter must occur pursuant to a legally imposed duty and the matters observed must be the subject of a duty to report. Moreover, the observations must be either the firsthand observations of the official making the report or of one with a duty to report to a public official." *Cincinnati Ins. Co. v. Volkswagen of America, Inc.*, 41 Ohio App.3d 239, 242, 535 N.E.2d 702 (10th Dist.1987)

10

**{¶44}** As Barnett explained, well operators are required to file annual reports with the ODNR regarding the oil and gas production of each well, which numbers are used by the ODNR to compile the reports on well production. Pursuant to R.C. 1509.11(A)(1), "[t]he owner of any well * * * that is producing or capable of producing oil or gas shall file with the chief of the division of oil and gas resources management, on or before the thirty-first day of March, a statement of production of oil, gas, and brine for the last preceding calendar year in such form as the chief may prescribe." This duty was also contained in former versions of the statute. Failure to comply with this duty results in a fine pursuant to R.C. 1509.99.

**{¶45}** The observations made in the public records at issue *do not* "have to have been made by a public officer or agency," rather, such observations "merely ha[ve] to be made 'pursuant to duty imposed by law as to which matters there was a duty to report.'" *State v. Steinman*, 79 Ohio App.3d 246, 250, 607 N.E.2d 67 (2d Dist.1992).

**{¶46}** In *Steinman*, the court found that although an odometer reading provided on a title document was not provided by an agency or other public official, it did not constitute hearsay since "[t]he law imposes a duty [on sellers of a vehicle] to report the correct odometer reading and imposes criminal penalties for failure to do so." *Id.* As such, the record qualified for the hearsay exception of Evid.R. 803(8). *Id.*

**{¶47}** Here, even under Big Sky's assertion, the numbers were reported by "the well operators." Since they were under a duty to do so, this does not constitute hearsay and falls under the Evid.R. 803(8) exception.

**{¶48}** The second assignment of error is without merit.

**{¶49}** In its third assignment of error, Big Sky argues that the court erred in finding the oil and gas leases had expired for lack of production, as such a finding was

11

against the weight of the evidence. Alternatively, it asserts the claims are barred by the doctrine of equitable estoppel.

**{¶50}** "When reviewing a civil appeal from a bench trial, an appellate court utilizes a manifest-weight standard of review." (Citation omitted.) *Xtreme Elements, L.L.C. v. Foti Contracting, L.L.C.*, 11th Dist. Lake No. 2016-L-043, 2017-Ohio-254, ¶ 25. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Although a reviewing court may disagree with the factfinder's resolution of conflicting testimony, it "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. Reversal is limited to those cases where "the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Id.* at ¶ 20.

**{¶51}** As to the contention that there was "no reliable evidence to contradict the testimony by Big Sky that these wells have been productive," we disagree.

**{¶52}** As an initial matter, we note that the oil and gas leases in the present case were for a term of one year, but that "said term shall extend as long thereafter as oil and gas, either of them, is produced by lessee from said land * * *." Thus, to determine whether the lease was properly terminated by the trial court, it is necessary to consider whether oil or gas were "produced by lessee." *See Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 212, 598 N.E.2d 1315 (5th Dist.1992) ("if after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the

12

lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor").

{¶53} As the trial court concluded, the evidence showed a lack of production in the wells from 1989-1991, as no records were submitted to show any production, the reports show zero production of oil and gas, and Victor testified that he was informed no operations were being conducted by the prior operator of the wells, who was going through bankruptcy. He also saw no representatives present on the land at that time removing oil. Big Sky did not provide evidence to dispute this lack of production during that three-year time period.

{¶54} A lack of production over such a period of time justifies termination of the lease due to its expiration. *Lekan* at 212; *Lauer v. Positron Energy Resources, Inc.*, 4th Dist. Washington No. 13CA39, 2014-Ohio-4850, ¶ 12 (while a "temporary cessation" may not terminate a lease with a clause requiring production, a lack of production for two years or more justifies a declaration that the lease is forfeited due to inactivity).

{¶55} Plaintiffs also argue that there were other time periods of non-production during the time Big Sky operated the wells, which was supported by Barnett's testimony that he believed the wells could not have been producing in "paying quantities," as was required for the lease to continue, due to the costs of operation and maintenance compared with the amount of production. *See Tisdale v. Walla*, 11th Dist. Ashtabula No. 94-A-0008, 1994 WL 738744, *3 (Dec. 23, 1994) (an oil and gas lease requiring continued "production," means oil or gas must be "produced in paying quantities").

{¶56} The Ohio Supreme Court has found paying quantities to be "quantities of oil or gas sufficient to yield a profit, even small, to the lessee over operating expenses," and that where the operator demonstrates he performs labor to keep costs low, this

should "inure to his benefit." (Citation omitted.) *Blausey v. Stein*, 61 Ohio St.2d 264, 265-266, 400 N.E.2d 408 (1980). In this case, neither the plaintiffs nor the court provided any analysis of this issue, although Barr testified that he was able to make the wells profitable due to his ability to perform labor himself. In any event, since the non-production from 1989-1991 was sufficient to justify a termination of the lease, and was relied upon by the trial court to do so, it is unnecessary for this court to consider whether it would be against the weight of the evidence to find a lack of production for the remaining years.

{¶57} Big Sky also argues that, even if the wells were not producing from the period of time from 1989-1991, no action was taken to terminate the lease, which was not yet owned by Big Sky at that time, and Big Sky began producing wells under the belief that the lease was still valid.

{¶58} "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994). "To invoke the doctrine of equitable estoppel, a party must demonstrate the four essential elements: '1) there must be a representation by words, acts, or silence; 2) the representation must communicate some fact or state of affairs in a misleading way; 3) the representation must induce actual reliance by the other party, and such reliance must be reasonable and in good faith; and 4) the other party would suffer prejudice if the representing party were not estopped or precluded from contradicting the earlier representation.'" (Citation omitted.) *Sloan v. Shafer Commercial and Indus. Servs., Inc.*, 11th Dist. Trumbull No. 2008-T-0013, 2008-Ohio-4765, ¶ 20.

{¶59} Big Sky contends that the Victors accepted royalty payments, which induced reliance as to the validity of the leases. It has been held, however, that the acceptance of royalty payments "is not inconsistent with [the] legal position [that the lease should be terminated] because as owners of the land, they were entitled to at least the royalties, no matter what the outcome in this case." *Sims v. Anderson*, 2015-Ohio-2727, 38 N.E.3d 1123, ¶ 28 (4th Dist.). There is also no indication that the Victors affirmatively represented any particular opinion on the validity of the leases to Big Sky.

{¶60} Further, Big Sky fails to show what detriment or prejudice resulted from the Victors' failure to seek termination of the lease previously. To prevail on the estoppel defense, it is necessary to demonstrate this element. Big Sky had the opportunity to produce oil and gas for a lengthy period of time, although it did so in very little quantities. Further, the testimony of Barnett demonstrated that the equipment used to service the wells was old, damaged, and in disrepair, indicating little investment on behalf of Big Sky. In the absence of an argument supporting each of the elements of equitable estoppel, we find no error in the failure to apply this doctrine.

{¶61} The third assignment of error is without merit.

{¶62} In its fourth assignment of error, Big Sky contends that the Trespass finding was against the manifest weight of the evidence. It argues that it was permitted to place a compressor on the Victors' property under the terms of the lease in order to operate the wells.

{¶63} A "'common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue[.]'" (Citation omitted.) *Apel v. Katz,* 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998).

15

{¶64} The trial court found that the compressor lease had expired in 1998. Following the trial, it held that a trespass occurred by virtue of the fact that Big Sky continued to have items on the plaintiffs' property, including a compressor and other equipment.

{¶65} The testimony presented at trial demonstrated that there had been a "gas compressor station" erected on the Victors' property at the time the leases were signed, which included a small building to house the compressor and a fence. The original lease document provided for payments for each year of renewal of the lease.[3] The lease, signed in 1978, stated that it would last for a period of not longer than 20 years. Thus, the lease allowing the compressor described therein, by its own terms, had expired, a fact Big Sky does not dispute. Victor also testified that he requested the compressor be removed from the property but Big Sky failed to comply.

{¶66} Victor testified that, rather than removing the compressor, it was moved to a different location on the property. Big Sky argues that this is not a trespass since it was authorized by the oil and gas leases to have a compressor on the property.

{¶67} Big Sky fails to specifically quote any pertinent portions of the lease for this argument, but contends that the lease allows "whatever structures and machinery are necessary to produce oil and as to be placed upon the land." A review of the lease shows that the lessee may use the property for "the sole and only purpose of mining and operating for oil and gas and laying of pipe lines, and of building tanks, power stations, and structures thereon to produce, save, and take care of said products * * *." The lease does not specify whether this permits the installation of a compressor,

---

3. There appears to be some confusion about the amount of rent actually paid, as the original compressor lease provides for payments of $100 per year, Victor testified at the damages hearing that he believed he received $900 per year, and Big Sky's brief states that the Victors received $900 per month in rent.

16

especially one that services wells not on the lessor's property. "If a contract is ambiguous, the court must examine the evidence and determine the intent of the parties." *Clem v. Steiner*, 11th Dist. Portage No. 2002-P-0056, 2003-Ohio-4865, ¶ 15. The fact that the parties had a separate compressor lease, for which payment was required by the lessee, evidences that the parties did not intend the oil and gas leases to cover a compressor. Further, the testimony indicated that the present compressor on the property services 40 wells, not just those belonging to the Victors, for which the Victors no longer receive compensation as they did under the compressor lease.

{¶68} Under these facts, we find no error in the trial court's determination that leaving the compressor on the property many years beyond the expiration of the lease and after being asked to remove it constituted a Trespass.

{¶69} The fourth assignment of error is without merit.

{¶70} In its fifth assignment of error, Big Sky emphasizes that the awards of damages for the cost of the space where the compressor was located and to complete remediation were not supported by the weight of the evidence.

{¶71} The "reviewing court *may* reverse a damage award if it is manifestly against the weight of the evidence." *Apergis v. Boccia*, 11th Dist. Trumbull No. 2009-T-0079, 2010-Ohio-2954, ¶ 24, citing *Windsor v. Riback*, 11th Dist. Geauga Nos. 2007-G-2775 and 2007-G-2781, 2008-Ohio-2005, ¶ 60. "In order to set aside a damage award as * * * against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, [and] cannot be reconciled with the undisputed evidence in the case * * *." (Citation omitted.) *Id.* "[D]amages will not be awarded based on mere speculation and conjecture" and must be "ascertainable with reasonable certainty." (Citation omitted.) *D.A.N. Joint Venture*

17

*III, L.P. v. Med-XS Solutions, Inc.*, 11th Dist. Lake No. 2011-L-056, 2012-Ohio-980, ¶ 35.

{¶72} First, Big Sky argues that the award of $18,000, which was based on award of rent of $500 per month for the years 2014 through 2016, was not supported by the evidence since the testimony as to the amount for rent lacked credibility, the compressor took up little space, and no attempt was made to rent the space.

{¶73} The Victors presented the testimony of a real estate agent who worked in Ashtabula County and provided an amount of $500 in rent per month based upon the fact that the lot was vacant, the value of other properties of that size, and her experience. While it is accurate that she did not compare the property to other properties that had oil and gas leases, this does not mean she was unable to arrive at an estimate that was reasonable based on her knowledge. Big Sky presented no evidence to counter her testimony. Further, Big Sky presents no authority for the proposition that the Victors' lack of attempts to try to rent the property means they are not entitled to damages for having a compressor on the property without permission.

{¶74} The contention that the compressor did not cover an area of the property that was an acre was countered by Victor's testimony that items relating to the compressor took up a significant amount of space. As to this issue and Big Sky's claim that the compressor now takes up no additional space and fits inside another piece of equipment on the property, this fails to take into account Victor's testimony that the compressor was loud and even led to noise complaints. It is apparent that the existence of the compressor made a portion of the property unusable for other purposes. Given the totality of these facts, we cannot find the damages award was against the weight of the evidence.

18

**{¶75}** Big Sky also argues that the cost of remediation for removing equipment and cleaning up the well sites was not supported by the weight of the evidence because the witness who testified as to remediation, Bukky, did not have experience with remediating oil and gas sites or the costs of removing oil wells.

**{¶76}** As an initial matter, Bukky specifically testified that he did not plan on plugging the wells and this was not part of the work he would complete. Thus, the amounts in question, which are solely those from Bukky's estimates of $22,000 and $3,260, do not include such work. Bukky's lack of experience plugging wells, then, is irrelevant as no damages were awarded for this purpose. Furthermore, Bukky testified as to the cost of removal of items from the properties and removing debris and grading the land, explaining his experience in preparing sites for construction and moving equipment from property. He discussed the basis for his estimate, which involved observing the site of the work and consulting with other companies about the amount of the estimate. Big Sky provides no reason to find that this amount was unreasonable and it was supported by the evidence.

**{¶77}** The fifth assignment of error is without merit.

**{¶78}** In its sixth assignment of error, Big Sky argues that there was no legal or factual justification for an award of attorney's fees in this case.[4]

**{¶79}** Absent an abuse of discretion, an appellate court may not reverse a trial court's judgment on attorney's fees. *Lozada v. Lozada*, 11th Dist. Geauga No. 2012-G-3100, 2014-Ohio-5700, ¶ 65.

**{¶80}** "Ohio has long adhered to the 'American Rule' with respect to recovery of

---

4. Big Sky concedes that legal fees associated with costs of recording the leases in the amount of $443 were properly awarded.

19

attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. However, a prevailing party may be entitled to attorney's fees in some instances as provided for by law, such as where the losing party "acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons. *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 181, 347 N.E.2d 527 (1976).

**{¶81}** As an initial matter, the trial court concluded that attorney's fees have been permitted "in cases similar to this one," i.e., Trespass actions. *Cleveland, Columbus, & Cincinnati RR. Co. v. Bartram*, 11 Ohio St. 457 (1860); *Payne v. Kerr*, 4th Dist. Ross No. 1233, 1986 WL 11028, *3 (Sept. 15, 1986). However, as has been more recently held in relation to a Trespass claim, "[a]ttorney fees are potentially recoverable as a part of compensatory damages *when punitive damages have been awarded*." (Emphasis added.) *Apel*, 83 Ohio St.3d at 14, fn.1, 697 N.E.2d 600; *also Dotson v. Village Res. Dev. Co.*, 9th Dist. Lorain No. 98CA007066, 1999 WL 494068, *5 (July 14, 1999) ("[t]he award of attorney fees [in a Trespass claim] is predicated upon a proper award of punitive damages"); *Spurlock v. Douglas*, 4th Dist. Lawrence No. 02CA19, 2003-Ohio-570, ¶ 20. In *Novy v. Ferrara*, 11th Dist. Portage No. 2014-P-0064, 2015-Ohio-4428, this court rejected the argument that an award of attorney's fees was proper in a Trespass claim, "since punitive damages were not warranted." *Id.* at ¶ 26. Since there was no award of punitive damages, attorney's fees were not justified solely because the plaintiffs prevailed on their claim for Trespass.

**{¶82}** To the extent that the Victors argued at oral argument that this court should apply its precedent in *Garcia v. Gillette*, 11th Dist. Ashtabula No. 2013-A-0015, 2014-Ohio-1868, to find that they were entitled to recover fees as the prevailing party in

20

a Trespass action, we disagree. In *Garcia*, this court did conclude that attorney's fees could be awarded "as compensatory damages" in a Trespass action and did not qualify it with a finding that such fees can be awarded "when punitive damages have been awarded." However, in its analysis affirming the decision not to award attorney's fees, this court specifically noted as part of its justification that no punitive damages had been awarded. It is unclear why the issue of punitive damages was considered if recovery of attorney's fees was permitted even in the absence of an award of such damages.

{¶83} Importantly, we emphasize that in *Garcia*, this court's statement that "Ohio common law allows the prevailing party in a trespass action attorney fees as compensatory damages" was based on citations to *Payne v. Kerr,* 4th Dist. Ross No. 1233, 1986 WL 11028 (Sept. 15, 1986), *Cleveland, Columbus and Cincinnati R.R. Co. v. Bartram,* 11 Ohio St. 457 (1860), and *Stevenson v. Morris,* 37 Ohio St. 10 (1881), which were decided before *Apel*. *Garcia* does not cite to or address the Supreme Court's conclusion in *Apel* that fees may be awarded as compensatory damages "*when punitive damages have been awarded.*" (Emphasis added.) *Apel* at 14, fn.1. We find no basis for rejecting the Supreme Court's express inclusion of the words "when punitive damages have been awarded." Other appellate districts' holdings support this conclusion, and in applying *Apel* in Trespass actions, they have concluded that an award of punitive damages is necessary to justify attorney's fees. *Spurlock* at ¶ 20; *Dotson* at *5. *See also Catalanotto v. Byrd*, 2017-Ohio-7688, 97 N.E.3d 1061, ¶ 22 (9th Dist.) (applying the same proposition of law).

{¶84} The lower court's other justification for its award of fees was that Big Sky "acted in bad faith by refusing to acknowledge that the wells in question ceased to produce in paying quantities," emphasizing Big Sky's failure to file releases of the

21

leases.

{¶85} Bad faith "is not simply bad judgment. * * * It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * * It means 'with actual intent to mislead or deceive another.'" (Citations omitted.) *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.,* 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8.

{¶86} The record does not support a finding that Big Sky's acts were of the type that constitute bad faith, as there was no evidence of fraud, deception, or conscious wrongdoing. Essentially, the lower court's finding of bad faith depends upon its conclusion that Big Sky should have conceded and not defended against the claims raised by the plaintiff: Big Sky "refus[ed] to acknowledge that the wells in question ceased to produce in paying quantities."

{¶87} Big Sky did not institute the present proceedings and merely chose to defend against the claims. Big Sky presented reasonable arguments in support of its contentions that the wells continued to produce at some level, as well as its justification for retaining the compressor. This included testimony that royalties were paid for gas production, gas had been produced from the wells, and the compressor was necessary to continue production. The fact that Big Sky ultimately did not prevail on these arguments does not amount to bad faith, "dishonest purpose," or "ill will." Further, while the lack of production from 1989-1991 impacts the validity of the lease, knowledge of this fact cannot be attributed to Big Sky to justify a bad faith finding since it did not operate the wells at that time.

{¶88} The trial court also suggests that Big Sky's reason for continuing to keep

22

the wells when they were not productive was its belief that there might be future profits in shale production, citing *Lang v. Weiss Drilling Co.*, 2016-Ohio-8213, 70 N.E.3d 625 (7th Dist.). However, that case provides no authority for the proposition that retaining a non-producing well in hopes of becoming profitable is a bad faith act or warrants an award of attorney's fees. It merely provides support for the proposition that the oil and gas lease should terminate. Further, we do not find it appropriate to ascribe bad faith based on assumptions. The failure to record the releases, as noted above, was the subject of dispute and Big Sky was entitled to have a court make a determination as to this issue.

**{¶89}** Given the foregoing, we hold that an award of attorney's fees was an abuse of discretion under the circumstances of this case and reverse this award, with the exception of the $443 which Big Sky does not dispute it owes for costs associated with recording the releases.

**{¶90}** The sixth assignment of error is with merit.

**{¶91}** In its seventh assignment of error, Big Sky argues that the trial court erred by ordering the payment of Barnett's expert fees.

**{¶92}** As an initial matter, the plaintiffs assert that Big Sky failed to object to an award of expert fees, with the exception of an unrelated hearsay objection, amounting to a failure to preserve that error for appeal. *See Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, 75 N.E.3d 692, ¶ 165 (7th Dist.).

**{¶93}** We will evaluate this assignment under a plain error standard of review. *Id.* at ¶ 166. Plain error is error seriously affecting "the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099

23

(1997), syllabus. Reviewing courts must limit the doctrine to cases "where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121.

{¶94} An award of expert witness fees in favor of the prevailing party has been found unjustified on multiple grounds. While costs can be recovered by the prevailing party pursuant to Civ.R. 54(D), the Ohio Supreme Court has repeatedly held that expert witness fees are generally not taxable as costs. *State ex rel. Williams v. Colasurd*, 71 Ohio St.3d 642, 644, 646 N.E.2d 830 (1995); *In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio*, 62 Ohio St.3d 1, 4-5, 577 N.E.2d 343 (1991). *Also Berry v. MAACO Auto Painting & Bodyworks Ctr.*, 11th Dist. Trumbull No. 98-T-0125, 1999 WL 959870, *5 (Oct. 15, 1999).

{¶95} Expert witness fees are considered litigation expenses, for which the opposing party is not responsible in the absence of statutory authority to the contrary. *Williams* at 645; *Ohio Edison Co. v. Franklin Paper Co., Inc.*, 18 Ohio St.3d 15, 16, 479 N.E.2d 843 (1985). No such statutory authority has been cited here by the trial court or the plaintiffs.

{¶96} We note that expert witness fees have been awarded to the prevailing party in some circumstances, such as where punitive damages and/or attorney's fees were properly awarded. *See Parrish v. Machlan*, 131 Ohio App.3d 291, 297, 722 N.E.2d 529 (1st Dist.1997) ("[l]itigation expenses may also be awarded as part of punitive damages"); *Spero v. Project Lighting, L.L.C.*, 11th Dist. Portage No. 2015-P-0027, 2016-Ohio-1363, ¶ 27. Neither of these circumstances apply here.

{¶97} The plaintiffs argue that this court has allowed payment of expert fees

24

"with proper facts in the proper case," citing *Spero, supra*, and *Parker v. Hegler*, 11th Dist. Lake No. 2008-L-009, 2008-Ohio-3739. As noted above, *Spero* involved a valid award of attorney's fees, which is not the case here. In *Parker*, while the lower court awarded expert witness fees, the issue of whether these were proper was not before this court. *Id.* at ¶ 16. Thus, neither of these cases applies here.

{¶98} Finally, the plaintiffs argue that they are entitled to "deposition related expert costs." While costs relating to the transcription of depositions have been found to be taxable in some scenarios, this has not included the expert's costs in participating in the deposition. *In re Election of Atty. Gen.*, 62 Ohio St.3d at 4-5, 577 N.E.2d 343 (denying that expert witness's fee for "testifying in a deposition" is covered as a cost of legal proceedings, unless provided for by a statutory mandate). Further, the plaintiffs' citation to *Jones v. Olcese*, 75 Ohio App.3d 34, 598 N.E.2d 853 (11th Dist.1991) in support of their position is unavailing. While this court did determine that costs relating to the taking of a deposition could be taxed to the losing party, it also found that expert witness fees may not be charged to the losing party. *Id.* at 42-44. It did not specify that expert witness fees associated with depositions were awardable to the prevailing party and we find that the Supreme Court's holding cited above would prevent such a conclusion.

{¶99} In the absence of any authority for an award of expert fees in favor of the plaintiffs, we find it was plain error for the trial court to order the payment of expert fees by Big Sky and vacate this award.

{¶100} The seventh assignment of error is with merit.

25

{¶101} For the foregoing reasons, the judgments of the Ashtabula County Court of Common Pleas are affirmed in part and reversed and vacated in part. Costs to be taxed to the parties equally.

THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

{¶102} I concur in the majority's disposition of the first five assignments of error. As to the sixth assignment of error, I respectfully dissent with the majority's position reversing the trial court's attorney fees award. Based on my dissenting opinion in *Accettola v. Big Sky*, I disagree with the majority's holding that parties cannot recover attorney's fees in a Trespass action without an accompanying award of punitive damages.

{¶103} I concur in part and dissent in part.