The State of Ohio, Appellant and Cross-Appellee, *v.* Spikes, Appellee and Cross-Appellant.

[Cite as State v. Spikes (1981), 67 Ohio St. 2d 405.]

(No. 80-1552—Decided July 29, 1981.)

*Mr. John E. Shoop,* prosecuting attorney, and *Mr. Judson J. Hawkins,* for appellant and cross-appellee.

*Messrs. Cort & Bruening* and *Mr. Kenneth M. Cort,* for appellee and cross-appellant.

LOCHER, J.   This cause presents two issues: (1) whether

the admission in evidence of hospital records under R. C. 2317.422 violated appellee's confrontation right;[3] and (2) whether due process of law and Crim. R. 16 require that the prosecutor provide defense counsel with the complete criminal records of all witnesses and of the defendant.

## I.

R. C. 2317.422 permits the admission in evidence of hospital records which are properly certified. Neither the preparer nor the custodian is required to testify. R. C. 2945.41 provides: "The rules of evidence in civil causes, where applicable, govern in all criminal causes." This court has previously observed, however, that a criminal defendant's constitutional rights limit the applicability of civil rules of evidence to a criminal case. Cf. *State* v. *Tims* (1967), 9 Ohio St. 2d 136, 137. We continue to endorse this view.

Appellee argues that R. C. 2317.422 denies his right to confront the witnesses against him and shifts the burden of proof to him. Appellee's position is that the confrontation clause requires that the prosecution produce as witnesses at trial the people who prepared the hospital records, because the hospital records are hearsay. We disagree.

## IA.

It is well settled that "[t]he Sixth Amendment's Confrontation Clause * * * [is] made applicable to the States through the Fourteenth Amendment, *Pointer* v. *Texas,* 380 U. S. 400, 403-405, (1965); *Davis* v. *Alaska,* 415 U. S. 308, 315 (1974) * * *." *Ohio* v. *Roberts* (1980), 448 U. S. 56, 62, reversing *State* v. *Roberts* (1978), 55 Ohio St. 2d 191.

In *Ohio* v. *Roberts, supra,* the United States Supreme Court summarized the analysis for determining whether hearsay is admissible *vis-a-vis* the Confrontation Clause of the Sixth Amendment. Usually, the prosecution must produce the declarant or demonstrate why the declarant is unavailable to testify. "A demonstration of unavailability, however, is not

---

[3] At trial, defense counsel objected to the admission in evidence of the hospital records because they were not authenticated and because he could not cross-examine the people who prepared the documents. Although defense counsel did not mention confrontation, we recognize that lawyers often treat confrontation and cross-examination as being synonymous. This nuance should not prevent our review of the merits.

always required. In *Dutton* v. *Evans,* 400 U. S. 74 (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness.\* \* \*" *Ohio* v. *Roberts, supra,* at page 65, fn. 7 (references omitted). Appropriate *"indicia* of reliability" must also be present. *Id.,* at 66.

There is no clear indication in the record in this cause whether the preparers of the hospital records were unavailable. Because the *Ohio* v. *Roberts* opinion states that unavailability is customarily necessary, we must consider what is constitutionally required when the prosecution does not establish that the witness is unavailable. *Ohio* v. *Roberts,* in fn. 7, quoted above, suggests that *Dutton* v. *Evans* (1970), 400 U. S. 74, provides the appropriate analytical framework.

In *Dutton,* defendant Evans and two others, Truett and Williams, were accused of murdering three police officers in Georgia. Evans elected a separate trial under Georgia law. Truett received immunity and testified for the prosecution against Evans. One of the 19 other witnesses who testified for the prosecution was a man named Shaw.

"He testified that he and Williams had been fellow prisoners in the federal penitentiary\* \* \*[and] that when Williams was returned to the penitentiary from [his] arraignment \* \* \*Williams\* \* \*[said], 'If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now.' " *Dutton, supra,* at 77.

The United States Supreme Court upheld Evans' conviction and noted, in a plurality opinion by Justice Stewart, that Shaw's "testimony, which was of peripheral significance at most, was admitted in evidence under a co-conspirator exception to the hearsay rule long established under state statutory law." *Dutton, supra,* at 87. The court also observed that it was inconceivable that cross-examination of Williams would reveal that Williams could not have known whether Evans was involved and that Williams made a misstatement under circumstances suggesting its reliability. The court concluded its opinion as follows:

"\* \* \*[T]he possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal.

"Almost 40 years ago, in *Snyder* v. *Massachusetts,* 291 U. S. 97, Mr. Justice Cardozo wrote an opinion for this Court refusing to set aside a state criminal conviction because of the claimed denial of the right of confrontation. The closing words of that opinion are worth repeating here:

" 'There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law and set the guilty free.' 291 U. S., at 122." *Id.,* at pages 89-90.

In this case, Veshinfsky, the victim, testified regarding his injuries, his hospitalization and his treatment. Defense counsel cross-examined Veshinfsky during the state's case-in-chief as well as during appellee's case. In *Dutton,* Shaw testified only as to what he *heard* Williams *say.* Nevertheless, the court suggested that defense counsel's cross-examination of Shaw adequately scrutinized the reliability of his testimony. *Dutton, supra,* at 87, 89.

Veshinfsky, on the other hand, testified as to what he saw, what he did and what he felt. Testimony by the preparers of the hospital records would have added little or nothing. The possibility that their testimony would demonstrate that the records "might have been unreliable was wholly unreal." *Dutton, supra,* at 89.

Furthermore, defense counsel received the medical records approximately one month before trial. The record from each hospital contained a sworn certification from the custodian of records as required by R. C. 2317.422. Each certification states the time and mode of preparation and the traditional foundation for business records: (1) true and accurate copies and (2) prepared and maintained in the ordinary course of business.

This simplified method for qualifying these exhibits at trial expresses the intention of the General Assembly to expedite proceedings when the evidence demonstrates considerable trustworthiness as is the case with hospital records.[4]

---

[4] In 6 Wigmore on Evidence (Chadbourn Rev.) 51, Section 1707, the author observed:

"A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant.***If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless.***[T]he Sixth Amendment guarantees federal defendants the right of compulsory process to obtain the presence of witnesses, and in *Washington* v. *Texas,* 388 U. S. 14,***this Court held that the Fourteenth Amendment extends the same protection to state defendants." *Dutton, supra,* at 95-96 (Harlan, J., concurring).[5]

Prior to trial, defense counsel could have deposed the preparers of the reports. Crim. R. 15. Likewise, he could have subpoenaed those same people to testify at trial. Crim. R. 17. Indeed, R. C. 2317.422 expressly provides that the parties may call witnesses to testify about the records. See fn. 2, *supra.* Rather, defense counsel made a tactical decision to do neither. Counsel for the defendant, in *Dutton,* made much the same choice.[6]

The United States Constitution does not require that this court install a procedural safety valve which would permit criminal defendants to sit idly by at trial and during its preparation and which would decimate established and reliable exceptions to the rule against hearsay. Defense counsel did not pursue his options of discovery and compulsory process. Claims of constitutional violations do not disguise the fact that

"The medical records of patients at a hospital***should be admissible, either on identification of the original by the keeper or on offer of a certified or sworn copy. There is a necessity (Section 1421, *supra*); the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a circumstantial guarantee of trustworthiness (Section 1422, *supra*); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone.***"

[5] The United States Supreme Court reaffirmed this position in *Ohio* v. *Roberts, supra* (448 U. S. 56), at 64.

[6] See 400 U. S. at 88, fn. 19.

defense counsel's choice of tactics determined whether the potential witnesses would testify.[7]

### IB.

Section 10, Article I of the Ohio Constitution is analogous to the Sixth Amendment and provides, in pertinent part: "In any trial, in any court, the party accused shall be allowed***to meet the witnesses face to face***." The following passage summarizes this court's long-standing interpretation of this provision: "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation." *Douglas* v. *Alabama* (1965), 380 U. S. 415, 418, quoted with approval in *State* v. *Madison* (1980), 64 Ohio St. 2d 322, 331; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 163, certiorari denied 385 U. S. 874.[8]

Nevertheless, appellee argues that our holding in *State* v. *Tims, supra* (9 Ohio St. 2d 136), requires that we deem R. C. 2317.422 to be violative of his confrontation right.[9] Yet,

---

[7] Ineffective assistance of counsel is a separate claim. Appellee has not raised this issue, nor is it apparent from the record. Indeed, we have already commented upon the fact that counsel preserved the confrontation issue for appeal by his objection. See fn. 3, *supra.*

[8] This analysis parallels that of the minority in *State* v. *Roberts* (1978), 55 Ohio St. 2d 191, 199, reversed by *Ohio* v. *Roberts* (1980), 448 U. S. 56. Celebrezze, J., wrote, at page 200, in his dissent:

"As was stated in *United States* v. *Allen* (C.A. 10, 1969), 409 F. 2d 611, 613, '***the test is the opportunity for full and complete cross-examination rather than the use which is made of that opportunity. ***The extent of cross-examination, whether at a preliminary hearing or at a trial, is a trial tactic. The manner of use of that trial tactic does not create a constitutional right.' "

The United States Supreme Court acknowledged the viability of this approach in *Ohio* v. *Roberts,* at 70, in light of *California* v.*Green* (1970), 399 U. S. 149.

[9] The *Tims* court (9 Ohio St. 2d, at 139) relied upon *People* v. *Lewis* (1940), 294 Mich. 684, 293 N. W. 907. The Michigan Supreme Court overruled *Lewis,* however, in *People* v. *Kirtdoll* (1974), 391 Mich. 370, 217 N. W. 2d 37. Justice Williams wrote for the *Kirtdoll* court, at pages 389-390, as follows:

"To summarize, the business entry statute as enacted by the Legislature and interpreted in civil cases carefully secures the trustworthiness of the material admissible into evidence. As a consequence, there is reasonable assurance that only the truth will be presented in evidence and that the safeguard of cross-examination is not necessary to assure the truth.

defense counsel had an *opportunity* to bring the preparers of the medical records before the court through both deposition and compulsory process. He elected to do neither in spite of the fact that he received the records one month before trial. Neither the Sixth Amendment to the United States Constitution nor Section 10 of Article I of the Ohio Constitution exists in a vacuum, procedurally or substantively. Accordingly, we hold that R. C. 2317.422 preserves appellee's confrontation right under both the federal and state constitutions.

We also note that *State* v. *Tims, supra,* was decided before *Ohio* v. *Roberts, supra* (1980); *Dutton* v. *Evans, supra* (1970), and *State* v. *Madison, supra* (1980). Therefore, we expressly overrule *State* v. *Tims, supra,* to the extent that it is inconsistent with this opinion.

## IC.

Appellee argues that admitting medical records under R. C. 2317.422 unconstitutionally shifts the burden of proof. We disagree.

Due process requires that the prosecution prove each element of a crime beyond a reasonable doubt prior to a conviction. See *In re Winship* (1970), 397 U. S. 358. R. C. 2901.05(A) embraces this standard and provides, in pertinent part:

"Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. * * *"

A distinction exists, however, between the burden of persuasion and the burden of going forward with or producing evidence. This court has already recognized this distinction. See *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 106-107. The United States Supreme Court recently observed:

"* * *[I]t is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of

---

"In addition to trustworthiness the limitations to the right of confrontation have generally included the element of necessity. The necessity in the case of the business entry statute is the avoidance of breakdown in business operations by calling away a person or persons from critical work to verify records that may speak for themselves. * * *" (Footnotes and citation omitted.)

persuasion\*\*\*.' " *Patterson* v. *New York* (1977), 432 U. S. 197, 201-202 (citations omitted).

At trial, the state presented the victim, Veshinfsky, and the medical records as evidence to meet its burden of persuasion as to the element of "serious physical harm."[10] R. C. 2317.422 merely provides an efficient means for introducing competent, reliable evidence. Defense counsel could have come forward with the preparers of the medical records but elected not to do so. As mentioned in Part I A, this unilateral, tactical decision does not create either a federal or a state constitutional violation.

## II.

Appellee argues that the trial court erred by denying appellee's request for the misdemeanor conviction records of all prosecution witnesses and for the complete criminal records of all defense witnesses. We disagree.

Crim. R. 16(B)(1)(b) requires that the prosecution furnish the defendant with a copy of his prior criminal record. See fn. 1, *supra.* Crim. R. 16(B)(1)(e) requires that the prosecutor furnish the defendant with a copy of the prior *felony* records of prosecution witnesses. See fn. 1, *supra.* The court ordered accordingly, and the prosecutor complied. On its face, Crim. R. 16 requires no greater disclosure of the criminal records of witnesses than that which the trial court ordered.[11] "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore* v. *Illinois* (1972), 408

---

[10] During the jury's deliberations, the jurors requested that the trial court explain serious physical harm, an element of both of the crimes alleged in the indictment. The trial judge repeated his earlier instruction: "Serious physical harm means any condition of such gravity as would normally require hospitalization, or which involves acute pain of such duration as to result in substantial suffering." The jury necessarily found "serious physical harm" only on count one. Mere "physical harm" is an element of assault, the lesser-included offense of which appellee was convicted on count two. Based on Veshinfsky's testimony, the jury could have found, beyond a reasonable doubt, that he experienced "acute pain of such duration as to result in substantial suffering." Therefore, any error which might have resulted from admitting the medical records in evidence would be harmless. See *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 156, 157.

[11] By comparison, Fed. R. Crim. P. 16 expressly requires disclosure of the defendant's record only.

U. S. 786, 795, rehearing denied in 409 U. S. 897. The *Moore* court, at pages 794-795, in light of *Brady* v. *Maryland* (1963), 373 U. S. 83, established the following criteria for reviewing the prosecution's denial of a defendant's request for the production of evidence before trial: "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

Defense counsel's cross-examination of Veshinfsky regarding his prior misdemeanor record would not necessarily have been favorable to appellee's case. Furthermore, Veshinfsky had testified on direct examination that he had a prior felony conviction. Clearly, impeachment by means of a misdemeanor conviction would have been immaterial.[12]

Crim. R. 16 requires only limited disclosure of criminal records. Other pretrial discovery of criminal records is within the sound discretion of the trial court. See *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 42-43, certiorari granted and death penalty vacated in 438 U. S. 910, 911.

There is, therefore, no constitutional right to discovery in these circumstances. In *Cicenia* v. *Lagay* (1958), 357 U. S. 504, overruled on different grounds in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 479 (warnings and waiver required *before* confession), the United States Supreme Court upheld a New Jersey court's denial of a defendant's request to inspect his confession before entering his plea on an indictment for murder. "[W]e cannot say that the discretionary refusal of the trial judge to permit inspection in this case offended the Fourteenth Amendment." 357 U. S., at 511 (reference omitted). The trial judge, in this case, construed Crim. R. 16 literally and applied it accordingly. There was, therefore, no abuse of discretion.

Accordingly, we reverse the Court of Appeals in part and hold that the hospital records are admissible under R. C. 2317.422. Otherwise, we affirm in part, and remand the cause to the Court of Appeals for instructions to the trial court to carry its sentence into execution.

---

[12] For the same reason, any error in denying defense counsel access to the victim's prior misdemeanor record was harmless and was not prejudicial.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN, STRAUSBAUGH, SWEENEY, HOLMES and C. BROWN, JJ., concur.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting for P. BROWN, J.