The STATE of Ohio, Appellee,

v.

STEINMAN, a.k.a. Miller, Appellant.

[Cite as *State v. Steinman* (1992), 79 Ohio App.3d 246.]

Court of Appeals of Ohio,
Montgomery County.

No. 12661.

Decided April 15, 1992.

*Walter F. Ruf,* for appellee.

*John H. Rion,* for appellant.

---

FAIN, Presiding Judge.

Defendant-appellant Lawrence J. Steinman, Jr., a.k.a. Larry Miller, appeals from his conviction and sentence, following a jury trial, for tampering with records, transferring a motor vehicle with a tampered odometer, and failure to provide the true odometer reading.

Steinman contends that the trial court erred in admitting evidence containing hearsay, thus denying him the right to confront witnesses against him, and that the prosecutor committed prejudicial misconduct by commenting on his decision not to testify at trial. We conclude that the evidence admitted constituted an exception to the hearsay rule as a public record under Evid.R. 803(8) and did not deprive him of his constitutional rights to confront witnesses. We further conclude that, although the prosecutor's comments were misconduct and constitute error, Steinman interposed no objection, and the comments do not satisfy the test for plain error. Accordingly, the judgment of the trial court is affirmed.

I

In April 1990, Sandra Towberman responded to an advertisement in the *Dayton Daily News* for a 1982 Dodge Colt. She spoke on the telephone to a man who identified himself as "Larry Miller," and the next day drove to the Habitat Condominiums in Montgomery County, where she met him and looked at the car. The car was actually a 1986 Dodge Colt, and she test-drove it for

about half a mile. The odometer showed approximately 49,000 miles. After thinking it over briefly, she agreed to buy the car for $2,150 plus her old car.

The next day, they met to exchange titles and keys. Larry Miller, who she identified at trial as the defendant, Lawrence Steinman, certified on the title papers in her presence that the true odometer reading on the car was 49,093 miles.

That evening, Towberman became suspicious when she noticed that the warranty page in the owner's manual was missing and that the prior owner of the car was shown as Fairfield Auto Sales, rather than Miller's wife, as Miller had claimed. Towberman checked with the Greene County Clerk of Courts, who had issued the title, and discovered that the prior certificate of title showed the odometer reading as 79,050.

Greene County Deputy Clerk William Litteral testified regarding four certificates of title to the Colt. These titles included those from Huntington National Bank to Fairfield Auto Sales, reflecting an odometer reading of 79,031; and from Fairfield Auto Sales to Larry Miller, reflecting an odometer reading of 79,050. The latter certificate indicated that Rob Snyder, of Fairfield Auto Sales, signed the certificate as seller and Larry Miller as buyer. Litteral testified that he had never seen the car, had no personal knowledge of the odometer reading, and that his knowledge was derived from the certificates under his custody and control. Chuck Hale, co-owner of Fairfield Auto Sales, testified that he did not personally buy the car in question; he did sign the certificate of title as buyer for Fairfield Auto Sales, but he had no personal knowledge regarding the odometer reading.

Robert Snyder, a co-owner of Fairfield Auto Sales, testified that he did not know a Larry Miller, but he identified the defendant as his roommate, Larry Steinman. Snyder testified that when Steinman indicated that he had a potential buyer for the car, Snyder gave Steinman the car and the title, saying that he wanted $2,000 and Steinman could keep anything over that amount that he was able to get for the car. Snyder also testified that what purported to be his signature on the certificate of title showing the sale from Fairfield Auto Sales to Larry Miller was not in fact his signature. Snyder testified that when he bought the car the mileage was just under 80,000, and, when he turned it over to Steinman, the car still had under 80,000 miles on it.

Steinman did not testify, and the defense presented no witnesses. During the prosecutor's rebuttal closing argument, he told the jury:

"You can't go around fingering your way through this case in a smoke screen and chasing these little red herrings that Mr. Mulligan has done, which I never even heard his client say he didn't do it. What he was trying to do is

say, hey, I'm going to stick all these other people on trial, so my client can kind of like hide behind the smoke screen."

There was no objection to this comment.

The jury found Steinman guilty of tampering with records, failing to give notice of tampering or nonfunction, and violating duties of a transferor. The trial court sentenced Steinman to one year on each count, to run concurrently; it then suspended that sentence and placed him on probation for a period not to exceed three years, on condition that he pay court costs and make restitution, if any was necessary.

From his conviction and sentence, Steinman appeals.

## II

Steinman's first assignment of error is as follows:

"By admitting exhibits containing inadmissable [*sic* ] hearsay, the trial court denied appellant the right to confront witnesses against him, as guaranteed by the federal and Ohio Constitutions."

First, we note that Steinman did not object at trial to the admission of exhibits on the basis of his constitutional right to confront witnesses. He simply argued below, as he does here, that because no one in the Greene County Clerk's Office, the public office in charge of automobile titles, had personally observed the odometer on the car in question, the titles contained hearsay and did not qualify for the hearsay exception under Evid.R. 803(8)(b), because they were not "trustworthy." Because Steinman did not cite a constitutional basis for his objection in the trial court, we will primarily address Evid.R. 803(8)(b), to which Steinman's objection was expressly related.

Evid.R. 803(8) provides as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) *matters observed pursuant to duty imposed by law as to which matters there was a duty to report*, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness." (Emphasis added.)

Steinman argues that the title certificates do not qualify for this hearsay exception because the odometer was never observed by anyone from the Greene County Clerk's Office. However, the observation does not have to have been made by a public officer or agency; it merely has to be made "pursuant to duty imposed by law as to which matters there was a duty to report." State law imposes a duty on sellers to report the odometer reading when they transfer title to motor vehicles. R.C. 4549.46.

Steinman also argues that the records have no indicia of trustworthiness. We disagree. The law imposes a duty to report the correct odometer reading and imposes criminal penalties for failure to do so. Furthermore, no logical reason comes to mind for overstating the odometer reading upon the transfer of a vehicle. We conclude that the certificates of title are public records that qualify for the hearsay exception of Evid.R. 803(8).

The cases Steinman relies on are distinguishable. The computer printout of a report of stolen property in *State v. Sims* (1983), 10 Ohio App.3d 56, 10 OBR 65, 460 N.E.2d 672, was properly excluded because there was no duty imposed by law to make that specific report. There is a duty imposed on citizens to report to a public officer the odometer reading upon the transfer of a motor vehicle.

*Washington Court House v. Moore* (Nov. 13, 1989), Fayette App. No. CA89–03–005, unreported, 1989 WL 135811, is factually distinguishable. The court of appeals held that it was error to admit a BMV notice of suspension as evidence that the defendant was driving while under a license suspension when there was no evidence that the notice was mailed to the defendant, no evidence that the notice was received by anyone, and the notice of suspension produced in court was on its face for three months rather than the suspension for three years reflected in the charge against the defendant.

In *State v. Miller* (Sept. 23, 1985), Highland App. No. 560, unreported, 1985 WL 11157, the court of appeals reversed Miller's conviction for DUI because the operator of the breathalyzer unit did not testify as to the results of Miller's test. The written test results did not fall within the exception to the hearsay rule because the language of Evid.R. 803(8) specifically excludes in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by the defendant. The court held that Miller should have been allowed to cross-examine the operator as to the machine and the results he observed. The case before us is distinguishable because the reports were not made by police officers or law enforcement personnel.

■ The confrontation issue was addressed in *State v. Tims* (1967), 9 Ohio St.2d 136, 38 O.O.2d 328, 224 N.E.2d 348. *Tims* dealt with R.C. 2317.40, the Business Records as Evidence Act, rather than Evid.R. 803(8). The trial court

had allowed a medical records clerk to testify regarding the doctor's conclusion that the victim had been raped. The Supreme Court held that the failure to allow the defendant to cross-examine the doctor regarding his qualifications and whether the tests had been performed correctly infringed Tims' constitutional right to confront the witnesses against him. Steinman's reliance on that case is misplaced. In any event, *Tims* was overruled on this point in *State v. Spikes* (1981), 67 Ohio St.2d 405, 21 O.O.3d 254, 423 N.E.2d 1122. *Spikes* specifically held that R.C. 2317.422 preserves the confrontation rights of a criminal defendant and generally discussed when the use of hearsay violates the confrontation rights of a defendant.

"The United States Constitution does not require that this court install a procedural safety valve which would permit criminal defendants to sit idly by at trial and during its preparation and which would decimate established and reliable exceptions to the rule against hearsay." *Spikes*, 67 Ohio St.2d at 411, 21 O.O.3d at 258, 423 N.E.2d at 1128. In the case before us, we note that Rob Snyder, who purchased the car for Fairfield Auto Sales, testified that the odometer read just under 80,000 when he got the car. Steinman was free to, and did, cross-examine Snyder with respect to his knowledge of the odometer reading, and the jury was free to decide what weight should be given to that evidence. Chuck Hale also testified and was cross-examined. Steinman could have called as a defense witness the person at Huntington Bank who signed the certificate of title when the car was transferred to Fairfield Auto Sales (Crim.R.17), but he chose not to do so.

There is nothing to suggest that live testimony would have added anything to the contents of the records, and nothing to suggest that cross-examination would have demonstrated that the records were unreliable. It was not error for the trial court to admit into evidence the certificates of title, and doing so did not violate Steinman's constitutional right to confront the witnesses against him.

Steinman's first assignment of error is overruled.

## III

Steinman's second assignment of error is as follows:

"By commenting on the fact that appellant did not testify, the prosecution committed prejudicial misconduct."

Steinman argues that the prosecutor's statement on rebuttal that "I never even heard his client say he didn't do it" was prejudicial error that denied his right to a fair trial. We agree that the prosecutor's statement was a comment concerning Steinman's failure to have testified in his own defense,

which violated Steinman's privilege against self-incrimination. Had an objection been interposed, Steinman would have been entitled at the very least to a cautionary instruction and a rebuke to the prosecutor, and perhaps even to a declaration of mistrial. However, because Steinman failed to object to the statement at the time it was made, our analysis must be based on the "plain error" standard of review.

Plain errors are those that so affect the substantial rights of a defendant that they should be noticed in order to prevent a manifest miscarriage of justice, not only to protect the defendant, but also to protect the integrity and the reputation of the judicial system. *State v. Berezoski* (Dec. 17, 1986), Montgomery App. No. 9568, unreported, 1986 WL 14770. Plain errors should not be recognized unless the outcome of the trial clearly would have been different but for the error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332.

The test to be applied in determining whether the comment was indeed a comment on the defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Cooper* (1977), 52 Ohio St.2d 163, 173, 6 O.O.3d 377, 382, 370 N.E.2d 725, 733. In the present case, the jury would necessarily take the comment, "I never even heard his client say he didn't do it," as a comment on Steinman's failure to testify. This comment was misconduct by the prosecutor that is prohibited by the Fifth and Fourteenth Amendments to the United States Constitution. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

While we do not condone the prosecutor's comment, even constitutional errors of this magnitude are waived if they are not brought to the attention of the trial court. *State v. Wade* (1978), 53 Ohio St.2d 182, 186, 7 O.O.3d 362, 364, 373 N.E.2d 1244, 1247. We do not find that the results clearly would have been different had the prosecutor not made this improper remark. The testimony of Snyder, Towberman, and Litteral was sufficient for a jury to find Steinman guilty beyond a reasonable doubt. After the prosecutor's unfortunate comment, the jury was instructed, as part of the trial court's general instructions to the jury, that it should not draw any adverse inferences from the defendant's decision to exercise his right not to testify. Under the plain error standard of review, we would have to presume that the jury disregarded this instruction in order to sustain this assignment of error. Although it is possible that the jury ignored this instruction in favor of the prosecutor's

improper invitation to draw an improper inference, we will not presume that the jury disregarded the instructions given it by the trial court.

Steinman's second assignment of error is overruled.

## IV

Both of Steinman's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.